No. 23,359.

THE JOPLIN-ERIE OIL COMPANY, *Appellee,* v. LAURA BUCKWALTER, *Appellant.*

### SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Oil and Gas Lease—Mutual Mistake in Description of Land—Injunction.* In an action to quiet title to an oil and gas lease and to enjoin the owner of the land from interfering with plaintiff's operations under the lease, the defense was that the lease had been fraudulently altered by the lessee. It was shown that in the description of the land there was an omission in the numbers of the section, township and range. *Held,* the evidence was sufficient to sustain a general finding to the effect that the omission was by the mutual mistake of the parties who understood at all times just what land was embraced in the lease.

2. SAME—*Alteration of Lease Without Fraudulent Intent—Equitable Jurisdiction.* The alteration being without fraudulent intent and merely expressing what otherwise would be supplied by intendment, a court of equity has jurisdiction to restore the instrument and enforce its original terms.

3. SAME. There was evidence sufficient to sustain a judgment in favor of plaintiff on the question of mistake, the intent with which the alteration was made, and to establish grounds for an injunction because of unjustifiable interference by defendant with plaintiff's operations under the lease.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed March 11, 1922. Affirmed.

*R. B. Smith,* and *C. M. Brobst,* both of Chanute, for the appellant.
*James A. Allen,* and *John J. Jones,* both of Chanute, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff brought the action to quiet title to an oil and gas lease and to enjoin defendant from interfering with the plaintiff operating under it. The court overruled a· demurrer to plaintiff's evidence; the defendant elected to stand on the demurrer, and judgment was rendered on the evidence in favor of plaintiff, and the temporary injunction was made permanent. She appeals from the judgment.

The defendant, Laura Buckwalter, was the equitable owner of the lands, but the record title had stood for many years in the name of her nephew, B. T. Cass, who resided in Chicago. In June, 1917, Mrs. Buckwalter agreed that a lease should be executed to E. W. Moore and H. W. Loy, in consideration of the payment of $120 rental for one year and $5 for the trouble of having her nephew execute the lease. They paid her the money and the lease was executed on the 30th day of June, 1917. It was filed for record in Neosho county on July 12, 1917. Shortly thereafter E. W. Moore discovered that the description of the land in the lease omitted the numbers of the section, township and range. He thereupon inserted in the original lease the words and figures "in sec. 27, twp. 28, r. 20."

The lease provided that the lessees were to commence a well on the premises within one year, or pay $120 for each additional twelve months such beginning was delayed, and until a well was completed. A producing well was completed on the 24th of August, 1917. The lease required the lessees to pay the lessor "free of cost in the tanks or pipe line to which second party may connect their wells, the equal one-eighth part of all oil produced." The appellee, which became the owner by assignment of the lease, connected the well with the pipe line of the Prairie Oil and Gas Company, the only pipe line in that field, and filed a division order directing the company to pay one-eighth of all the oil produced from the premises to Mrs. Buckwalter. Her share of the royalty from this well has ever since remained to her credit on the books of the pipe-line company.

Sometime in March, 1919, there was filed for record a deed, dated April 28, 1903, to Mrs. Buckwalter from her nephew conveying to

her the legal title to the land. Evidently about this time she conceived the idea that the defect in the description enabled her to ignore the lease. At all events on December 5, 1919, she wrote a letter to the Prairie Oil and Gas Company notifying it to cease pumping or taking oil from the property, stating that she was the sole owner, and had leased it to no one, and giving the company five days from that date to take "your pump and pipes from the farm above mentioned," stating that if the company failed to comply with her request by December 10, she would leave Wichita for Erie December 11 "(taking with me my pipe cutter and wrenches), at which time I will remove and take pipes and pumps. (It will not be my first experience in plumbing.)"

The Prairie Oil and Gas Company at once wrote plaintiff, inclosing a copy of the letter, stating, "we would not care to be drawn into any litigation in purchasing oil, and will not make any further runs from your lease until this matter is adjusted."

Two contentions are made. One is that the lease was void because of the omission in the description of the land; and in this connection it is contended that the lease and county records were changed without authority, and that the lease thereby became void. The general judgment in plaintiff's favor includes a finding that the omission of the numbers of the section, township and range was by the mutual mistake of the parties, as claimed in the petition; that the parties understood at all times just what land was embraced in the lease. We think the alteration was without fraudulent intent, and that the change merely expresses what otherwise would be supplied by intendment. (*Bank v. Nordstrom,* 70 Kan. 485, 78 Pac. 804; 2 C. J. 1193, 1197.) The liability of the parties was the same before as after the change.

"Where an instrument has been altered without fraudulent intent, courts of equity have exercised jurisdiction both to restore the instrument and to enforce its original terms, . . . for mistake and discovery are matters peculiarly within the jurisdiction of such courts." (2 C. J. 1184, citing 16 Cyc. 68.)

Mrs. Buckwalter had received valuable benefits from the contract by the drilling of a paying well on her premises, and she retained the first year's rental of $120.

"If a party has received benefits under a contract which is subsequently altered he will not be permitted to relieve himself from all liability and at the same time retain the benefits derived. He must rescind the contract in toto and return what he has received if he wishes to be entirely discharged on account of the alteration." (2 C. J. 1184, citing *Shaw v. Probasco,* 139 Ga. 481.)

What is claimed was an alteration of the county records was merely a notation by the register of deeds of the change in the original instrument, made on the margin of the record where the lease had been recorded. So far as the rights of these parties were concerned, the lease would be binding whether it was recorded or not, and the right of the plaintiff to maintain the action is not affected by what the county records show.

The main contention is that the injunction was improvidently issued and should not have been made permanent. Authorities are cited to the effect that mere apprehension or possibility. of wrong or injury by defendant is ordinarily not enough to warrant the granting of an injunction; and it is insisted that the burden was upon plaintiff to show that injury was likely to occur, and that its remedy at law was inadequate. We think the evidence abundantly established ground for an injunction; it showed an unjustifiable interference with plaintiff's operations under the lease, and the refusal of the only available pipe-line company to purchase the oil because of specific threats on the part of Mrs. Buckwalter to remove and destroy the equipment of the pipe-line company.

The judgment is affirmed.